# EXHIBIT A



**DEVELOPMENT SERVICES AGREEMENT**

1. This Development Services Agreement (the "Agreement") is made and entered into as of this 15th day of June 2015 (the "Effective Date") by and between Faraday & Future Inc., a California corporation located at 18455 S Figueroa St., Gardena, CA 90248 (the "Company"), and Futuris Group of Companies 6601 Overlake Place, Newark, California, 94560, USA (the "Developer" or the "Supplier").

    WHEREAS, the Company and Developer desire that Developer provide Deliverables defined within Exhibit A related to the Development of Front and Rear Automotive Seating Systems and delivery to the Company on the terms and conditions set forth below; and upon completion of such tasks will be invited to quote for the provision of components to support mass production.

    The Company and Developer therefore agree as follows:

2. <u>Delivery and Acceptance</u>:

    2.1 Developer shall use its reasonable best efforts to complete the Development Task, and to deliver to the Company all applicable Deliverables, in accordance with the development schedule as described within Exhibit A. Developer shall deliver to the Company all Deliverables, including documentation, for evaluation by the Company.

    2.2 Upon delivery to the comprising the completion of each Deliverable, including related documentation, the Company shall evaluate such Deliverables for conformity to Task Description and specifications. The Company shall provide Developer, within 5 days after delivery of such materials, with written acceptance thereof, or a statement of defects to be corrected. Developer shall promptly correct such defects and return the corrected Deliverables for reevaluation, at no additional charge.

3. <u>Acceptance of Proposal</u>: By signing this proposal or issuing a PO against this proposal, Company indicates acceptance of all Terms and Conditions laid out in this proposal. Developer shall start work upon receipt of a signed proposal or Purchase Order.

4. <u>Confidential Information</u>: The Non-Disclosure Agreement (NDA) between Developer and Company shall govern this contract. In the event of a conflict between the NDA and this Agreement, the NDA shall govern.

5. <u>Working Arrangement</u>: Developer and Company hereby agree to work together in good faith as a team of independent contractors. Nothing in this agreement shall create or be deemed to create any agency, franchise, joint venture, employment, partnership, or other relationship between the Parties, and neither Party shall have power or authority to obligate or bind the other in any manner whatsoever.

6. <u>Visitation/Project Review</u>: Company will be expected to participate in all milestone design reviews. Additional on-site progress reviews must be scheduled with <TIME> advance notice.

7. <u>Warranty</u>: Deliverables shall be free from defects, when used for its intended purpose, for thirty (30) calendar days after delivery. Any damage generated by improper handling or use, or as a result of the addition of systems not designed for integration by Developer will not be warranted.

8. NOTWITHSTANDING THE FOREGOING, DELIVERABLES, INTELLECTUAL PROPERTY, TECHNICAL SUPPORT, AND/OR SERVICES PROVIDED IN THIS PROPOSAL ARE PROVIDED "AS IS".

    DISCLAIMER OF WARRANTY: THE WARRANTY SET FORTH IN THIS PROPOSAL IS IN LIEU OF, AND THIS AGREEMENT EXPRESSLY EXCLUDES ALL OTHER OBLIGATIONS TO CORRECT OR REPLACE DELIVERABLES AND OTHER WARRANTIES, EXPRESS OR IMPLIED, ORAL OR WRITTEN, INCLUDING, WITHOUT LIMITATION, ANY

# Faraday & Future

WARRANTY THAT DELIVERABLES ARE ERROR-FREE, OR ARE COMPATIBLE WITH ALL EQUIPMENT AND SOFTWARE CONFIGURATIONS; AND ANY AND ALL WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE

9. <u>COMPANY:</u> agrees that the limitations of liability and disclaimers set forth in this contract will apply regardless of whether COMPANY has accepted the deliverables or any other product or service delivered by Developer. The parties agree that Developer has set its prices and entered into this contract in reliance upon the disclaimers and limitations set forth herein, that the same reflect an allocation of risk between the parties (including the risk that a contract remedy may fail of its essential purpose or cause consequential loss), and that the same form an essential basis of the bargain between the parties. In the event COMPANY elects to stop work on the project prior to the completion of all deliverables stated for the authorized Project, Developer will be entitled to invoice COMPANY for all costs and expenses incurred up to the date of receipt of the notice of termination, plus reasonable termination costs including material disposition costs if applicable.

10. <u>Invoices:</u> Any changes to deliverables, schedule, assumptions, and/or milestone dates shall affect the contract value. Developer will highlight the impact and calculate the additional effort. Developer will present a change order to account for the additional effort. All payments will be invoiced according the milestone schedule above.

11. <u>Payment:</u> COMPANY shall pay all invoices fifteen (30) days after the invoice date. After such Thirty (30) day period, a default rate of 1% per month shall be added to the amount of such invoice until paid. If COMPANY contests in good faith, within fifteen (15) days from the invoice date, the Contract Costs set forth in such invoice, then no default rate shall be applied. Any invoice clarifications should be brought to Developer's attention in writing before the Invoice due date. After such invoice issues have been resolved, the invoice will be due within five (5) business days or on the original invoice due date, whichever is later. In the event COMPANY elects to stop work on the Project prior to the completion of all deliverables stated for the authorized Project, Developer will be entitled to invoice COMPANY for all costs and expenses incurred up to the date of receipt of the notice of termination, plus reasonable termination costs including material disposition costs if applicable. Developer reserves the right to withhold delivery of Deliverables, Intellectual Property, and/or Support until payment in full for amounts past due are tendered.

12. <u>Expiration:</u> This quote is valid until N/A.

13. <u>Intellectual Property:</u> New and joint Intellectual Property (IP) developed by Developer during the course of this effort will belong to COMPANY upon full payment to Developer of the associated milestone or authorized change order value. Each party shall continue to own all right, title and interest in and to all of its preexisting IP.

13.1 Definitions:

(a) Intellectual Property ("IP") means confidential information, proprietary information, inventions, improvements, developments, discoveries, technical information, trade secrets, computer programs, source code, writings, designs and patents and patent applications.

(b) Background Intellectual Property ("Background IP") means (i) any Intellectual Property created prior to the Effective Date of this Agreement, or (ii) any Intellectual Property that was not created in the course of performance of services for COMPANY.

(c') Derivative Intellectual Property ("Derivative IP") means any Intellectual Property created as a derivative or improvement work of or derived from one or both party's Background IP;

**⟨F⟩Faraday & Future**

(d) Foreground Intellectual Property ("Foreground IP") means any Intellectual Property created solely by one Party in the course of performance under this Agreement that is not Derivative IP;

(e). Jointly Developed Intellectual Property ("Joint IP") means any Intellectual Property created jointly by the Parties in the course of performance under this Agreement.

(f) Modeling IP ("Modeling IP") means any Intellectual Property that directly supports system modeling, simulation, performance prediction, or visualization of system behavior or performance.

(g). Information Exchange. It is the intent and understanding of the Parties to maintain and to have an open exchange of technical information during the various phases of the Project. None of the information which may be submitted or exchanged by the Parties shall constitute any representation, warranty, assurance, guarantee or inducement by either Party to the other with respect to the infringement of any Intellectual Property rights, any right of privacy, or other rights of third persons.

13.2 Use of Intellectual Property:

(a) Background IP. Background IP provided by each Party shall continue to be owned solely by the contributing Party. Notwithstanding the foregoing, if any Developer IP assigned to COMPANY is found to incorporate any Developer Background IP, Developer agrees to grant to COMPANY a fully-paid, non-exclusive, worldwide, irrevocable license to use such Background IP.

(b) Derivative IP. Derivative IP shall be owned solely by the creating Party. Notwithstanding the foregoing, if any Developer IP assigned to COMPANY is found to incorporate any Developer Derivative IP, Developer agrees to grant to COMPANY a fully-paid, non-exclusive, worldwide, irrevocable license to use such Derivative IP UNLESS such Derivative IP is expressly excluded by incorporating the details of such IP in Appendix B. Appendix B will be amended by the Parties in writing as necessary to expressly exclude the use of any Developer Derivative IP.

(c) Foreground IP. COMPANY shall own all right, title and interest in and to Foreground IP developed under this Agreement. As such, COMPANY shall have the right to obtain and own any and all patents covering Foreground Information. The decision to file for patent protection or to maintain an invention as a trade secret is solely COMPANY's. COMPANY shall be responsible for all patent protection costs, including, without limitation, costs for the preparation, application, maintenance, accounting, prosecution, enforcement, and defense of each patent. Developer shall disclose to COMPANY any Foreground IP no later than 30 days from creation. Developer shall provide all necessary assistance, including but not limited to execution of assignments, oaths, and declarations from its respective employees, to assist COMPANY in obtaining and in enforcing its rights in any Foreground IP. COMPANY shall be responsible for all expenses associated with such assistance, including payment to Developer at its then current rates for performing such services, including a premium if key personnel are required on short notice. COMPANY is to advise Developer in a timely manner and in writing with regards to any assistance that would be required that would allow Developer to allocate necessary resources and calculate the cost of required assistance.

(d) Joint IP. COMPANY shall own all right, title and interest in and to Joint IP developed under this Agreement. As such, COMPANY shall have the right to obtain and own any and all patents

**✐Faraday & Future**

covering Joint IP. The decision to file for patent protection or to maintain an invention as a trade secret is solely COMPANY's. COMPANY shall be responsible for all patent protection costs, including, without limitation, costs for the preparation, application, maintenance, accounting, prosecution, enforcement, and defense of each patent. Developer shall disclose to COMPANY any Joint IP no later than 30 days from creation. Developer shall provide all necessary assistance, including but not limited to execution of assignments, oaths, and declarations from its respective employees, to assist COMPANY in obtaining and in enforcing its rights in any Joint IP. COMPANY shall be responsible for all expenses associated with such assistance, including payment to Developer at its then current rates for performing such services, including a premium if key personnel are required on short notice. COMPANY is to advise Developer in a timely manner and in writing with regards to any assistance that would be required that would allow Developer to allocate necessary resources and calculate the cost of required assistance.

(e) Modeling IP. Each party retains full and exclusive rights to its Modeling IP. Any results, output or reports generated by Developer from the use of Modeling IP will constitute "works for hire" and will be the property of COMPANY.

13.3 Other than those licenses expressly stated in this Section, nothing in this Agreement shall be deemed to grant licenses under any Intellectual Property Rights.

13.4 Developer warrants that it has the right to grant COMPANY the rights and licenses set out herein, and COMPANY warrants that it has the right to grant Developer the rights and licenses set out herein.

14. Termination: This Agreement may be terminated upon mutual written consent of both Parties or upon the occurrence of any of the following: (i) the other party defaults in the performance of one or more of its obligations under this Agreement and such default continues for thirty (30) days after written notice of such default is provided to such defaulting party (ii) the other party becomes bankrupt or insolvent. (iii) Company (COMPANY) can terminate the project after review at milestones listed in the timetable; In the case of termination, Developer will deliver the following to COMPANY upon receipt of the milestone payment:

All the analysis process, data, used which is related to the project needs to be handed over to COMPANY, and Developer is not allowed to keep these data.

All scan data needs to be handed over to COMPANY

IP related to/during project belongs to COMPANY as outlined by Section 14

15. Assignment: Neither party may assign this Agreement nor any of the benefits or obligations contained herein, in whole or in part, without the prior written consent of the other party.

16. Taxes: COMPANY agrees to pay any state, local or other taxes or charges actually paid by Developer in connection with providing the Materials under this Agreement; provided that COMPANY shall not be responsible for the personal income taxes of any Developer Party.

17. Scope Change: In the event that changes to the Scope, Deliverables or Schedule are requested by COMPANY, or proposed by Developer and accepted by COMPANY, the impacted sections of this Agreement shall be updated accordingly. Such updates shall not be binding on either party until approved by both Parties. These updates will be memorialized in Appendix A.

**Faraday & Future**

18. <u>Travel</u>: The travel costs incurred by a Developer Party at the request of COMPANY shall be absorbed and included within the Developer's agreed to pricing.  Developer reserves the right to negotiate any travel costs based on the circumstances of the travel request from COMPANY. Developer will require written authorization for these costs before providing any such support or making travel arrangements. This will ensure that COMPANY is not invoiced for any unapproved travel costs.

19. <u>Late Delivery</u>: Late delivery of any Company-supplied item/information or incomplete information or non-functional items will result in at least a day-for-day schedule delay of the remaining project schedule by Developer. Developer will highlight in writing if any items or information are critical path and could affect final delivery dates.   Failure of Developer to inform Company of self-inflicted delays will result in a week-for-week final payment discount accruing at 10%.

20. <u>Governing Law</u>: This Agreement shall be governed by the law of the State of California without regard to the conflicts of law provisions thereof, and the parties agree that the exclusive jurisdiction and venue of any litigation with respect of this Agreement shall rest in the federal courts in Los Angeles, California or state courts in Los Angeles, California, and that no party shall claim that such venue is inconvenient or improper.

21. <u>Force Majeure</u>: Neither Party shall be responsible or liable for failing to perform any part of this Agreement or for any delay in performing under this Agreement, directly or indirectly resulting from or contributed to by any foreign or domestic embargoes, seizures, acts of God, insurrections, wars and/or continuance of war; or the adoption or enactment of any law, ordinance, regulation, ruling or order directly or indirectly interfering with its performance under this Agreement; or lack of the usual means of transportation, fires, floods, explosion, strikes or earthquakes; or other events or contingencies beyond its control, either of the foregoing nature or of any other kind.



**EXHIBIT A**

**STATEMENT OF WORK**

1.  This Statement of Work specifies the Development Tasks and Deliverables due from Developer, as more particularly described herein. The Development Task Description and Deliverables are as follows:

    1.1. <u>Development Task Description</u>:

    To provide on-site Engineering and CAD Support to assist Faraday & Future in the concept engineering development process to enable the prototype manufacture of samples for fitment in a Show vehicle planned for December 2015 all in accordance with your recent Concept Engineering Support Proposal to Sohel Merchant dated 22nd May 2015.

    Statement of work as detailed below ;

**1. Front Seats**
- Structure to meet FMVSS requirements and be able to achieve ENCAP 5 star rating
- 16 way power seats
- Power lumbar
- Power headrests
- Heating
- Ventilation
- Massage system
- Cushion length adjustment
- Package protection for a captain's armrest

**2. Executive Rear Seats**
- Independent executive style 2 separate rear seats with console in the middle
- ABTS
- Ability to recline up to 55 degrees (subject to package constraints)
- Full electric function for rear seat articulation
- Leg support
- Heating
- Ventilation
- Massage system
- Ability to integrate with the control panel in rear centre console
- Development of 60/40 Split Folding 'Base' Seat as part of above



1.2 Engineering Support Proposal

**Key Assumptions**

- Front seat architecture will initially be based on Futuris FS-3.2 structure with the ability to changeover to FS-4 or other composite structure options when those products are fully validated and available for use.

- Rear seats architecture to be developed in conjunction with F&F based on packaging constraints and feature requirements

- Initial support for the concept development phase will be with a Lead Design Engineer and CAD Designer each for 1st and 2nd row seats. The two people supporting 1st row will be based on-site at F&F for 2 to 3 days per week as required.

- 2nd row Lead Design Engineer & CAD Designer will be based in Australia and support 1 week per month on-site at F&F to participate in design reviews and concept presentations.

- Lead Design Engineer for 1st row will also act as the liaison engineer to interface and communicate with the 2nd row engineering team to be based in Australia.

- The design team will meet through video conferencing on a regular basis as required.

- Futuris is capable and resourced to provide ALIAS surfacing, CAE simulation, Trim Engineering and Prototype Development support as required by F&F. Any support requirement for these activities for the next phase will be quoted separately based on an agreed scope of work.

- Futuris commits to extend the support of a Chief Engineer, Program Manager and Executive management support for the peer design reviews and general guidance required to the design team during the initial phase at no additional cost.

- Costing provided below is based on the specified support arrangement and takes into consideration the associated travel and incidental expenses.

- Futuris is willing to share its IP on current and future seat architectures being developed on the basis that Futuris will be the intended production source for the manufacture and supply of seats for F&F.

- Futuris will have to reallocate the activities and release the dedicated high-end resources required to support this activity. As such, a commencement date of 15th of June 2015 is recommended for this design activity. This support arrangement will be reviewed and additional resources allocated as required by F&F at additional cost

**Faraday & Future**

1.3. Timing:

(a) 3 Months from receipt of instruction to proceed / PO. Scope and timing subject to change based on Company change requirements as defined within section 1.2 Deliverables.

2. Compensation: The Company shall pay Developer as defined in Appendix A of this Statement of Work:

2.1 US $255,000.00 ($85,000 for 3 months) : Invoicing and payment as defined within Section 10 and 11 above.

3. Miscellaneous: This Statement of Work (together with Exhibit A attached hereto) is wholly incorporated by reference into the Agreement. In the event of a conflict between the terms of this Agreement and the Statement of Work, the terms and conditions of the Agreement shall prevail.

IN WITNESS WHEREOF, the parties have executed this Statement of Work to be incorporated by reference into the Development Services Agreement dated June 15th 2015 referenced above.

Faraday & Future Inc.,                                    Futuris Group of Companies.

By: _____                    By: _____

Print Name:  Carl Ellis_____          Print Name:  SADHA KAMESWARAN____

Title: Purchasing Manager_____       Title:  GENERAL MANAGER - BD & PROGRAMS

Date: __6/15/15_____               Date: __6/18/15_____

# EXHIBIT B



**Faraday Future**
18455 S Figueroa St, Gardena, CA 90248

# Purchase Order

| Date | P.O. No. |
|---|---|
| 10/1/2015 | 0213-669 |

Vendor

Futuris Automotive (CA) LLC
6601 Overlake Place
Newark, CA 94560

| Vendor Quote # | N/A |
|---|---|

| Requested By: | Sohel Merchant |
|---|---|

| Payment Terms | Delivery Date |
|---|---|
| Net 30 | 10/1/2015 |

| Item | Description | Qty | Rate | Amount |
|---|---|---|---|---|
| | Order raised to cover Production ED&T for Faraday Future Seating System, as per Futuris proposal dated September 8th 2015, from Sadha Kameswaran to Carl Ellis.<br><br>**** Please also see Development Services Agreement covering this contract **** | | | |
| | Total ED&D Cost $11,515,470 - to be divided over 21 months based on yearly totals as detailed below ; | | | |
| Seats | 2015 ED&T - October - December ( 3 monthly payments of $323,857) | 3 | 323,856.667 | 971,570.00 |
| ED&T Expenses | 2016 ED&T - January - May (5 monthly payments of $554,009) | 5 | 554,008.58 | 2,770,042.90 |
| ED&T Expenses | 2016 ED&T Adjustment - June - December (7 monthly payments of | 7 | 574,179.12 | 4,019,253.84 |
| Seats | 2017 ED&T Adjustment - January - June ( 6 monthly payments of $625,767) | 6 | 625,767.21 | 3,754,603.26 |
| | Invoice Payment is subject to Faraday Future approval of work completed on a monthly basis. | | | |
| | Payment Terms : Net 30 Days. | | | |
| | | | **Total** | **$11,515,470.00** |

Please send all invoices and/or accounting inquiries to invoicing@faradayfuture.com

# EXHIBIT C

**Faraday Future Inc.**

**DEVELOPMENT SERVICES AGREEMENT**

Revision 1 – 10th October 2015

1. This Development Services Agreement (the "Agreement") is made and entered into as of this 15th day of June 2015 (the "Effective Date") by and between Faraday Future Inc., a California corporation located at 18455 S. Figueroa St., Gardena, CA 90248 (the "Company"), the Futuris Group of Companies of 6601 Overlake Place, Newark, California, 94560, USA (the "Developer" or the "Supplier").

Addendum - October 10th 2015 – Agreement updated to include Production ED&D referenced in Company PO#0213-669 and in line with Production Scope of Work shown in Appendix 'A' below.

WHEREAS, the Company is desirous of obtaining from Developer various Design / Engineering Services defined within Exhibit A (the "Deliverables") related to the Front and Rear Seating System of a new electric vehicle to be designed/manufactured by COMPANY (the "Project") and delivery to the Company on the terms and conditions set forth below; and

WHEREAS, the Company desires to use the Deliverables to execute the Project and approved upon successful execution by Developer of this agreement.

The Company and Developer therefore agree as follows:

2. <u>Delivery and Acceptance</u>:

   2.1 Developer shall use its reasonable best efforts to complete the Development Task, and to deliver to the Company all applicable Deliverables, in accordance with the development schedule as described within Exhibit A. Developer shall deliver to the Company all Deliverables, including documentation, for evaluation by the Company.

   2.2 Upon the completion of each Deliverable, including related documentation, the Company shall evaluate such Deliverables for conformity to Task Description and specifications. The Company shall provide Developer, within 5 days after delivery of such materials, with written acceptance thereof, or a statement of defects to be corrected. Developer shall promptly correct such defects and return the corrected Deliverables for reevaluation, at no additional charge.

3. <u>Acceptance of Proposal</u>:  By signing this proposal or issuing a PO against this proposal, Developer indicates acceptance of all Terms and Conditions laid out in this proposal. Developer shall start work upon receipt of a signed proposal or Purchase Order.

4. <u>Confidential Information</u>:  The Non-Disclosure Agreement (NDA) between Developer and Company shall govern this contract. In the event of a conflict between the NDA and this Agreement, the NDA shall govern.

5. <u>Working Arrangement</u>: Developer and Company hereby agree to work together in good faith as a team of independent contractors. Nothing in this agreement shall create or be deemed to create any agency, franchise, joint venture, employment, partnership, or other relationship between the Parties, and neither Party shall have power or authority to obligate or bind the other in any manner whatsoever.

6. <u>Visitation/Project Review</u>:  Company will be expected to participate in all milestone design reviews. Additional on-site progress reviews must be scheduled with two weeks advance notice.

7. <u>Warranty</u>: Deliverables shall be free from defects, when used for its intended purpose, for thirty (30) calendar days after delivery.



8. NOTWITHSTANDING THE FOREGOING, DELIVERABLES, INTELLECTUAL PROPERTY, TECHNICAL SUPPORT, AND/OR SERVICES PROVIDED IN THIS PROPOSAL ARE PROVIDED "AS IS". DISCLAIMER OF WARRANTY: THE WARRANTY SET FORTH IN THIS PROPOSAL IS IN LIEU OF, AND THIS AGREEMENT EXPRESSLY EXCLUDES ALL OTHER OBLIGATIONS TO CORRECT OR REPLACE DELIVERABLES AND OTHER WARRANTIES, EXPRESS OR IMPLIED, ORAL OR WRITTEN, INCLUDING, WITHOUT LIMITATION, ANY WARRANTY THAT DELIVERABLES ARE ERROR-FREE, OR ARE COMPATIBLE WITH ALL EQUIPMENT AND SOFTWARE CONFIGURATIONS; AND ANY AND ALL WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE

9. COMPANY agrees that the limitations of liability and disclaimers set forth in this contract will apply regardless of whether COMPANY has accepted the deliverables or any other product or service delivered by Developer. The parties agree that Developer has set its prices and entered into this contract in reliance upon the disclaimers and limitations set forth herein, that the same reflect an allocation of risk between the parties (including the risk that a contract remedy may fail of its essential purpose or cause consequential loss), and that the same form an essential basis of the bargain between the parties. It is therefore understood that Developer shall in no case be responsible or liable for consequential, incidental or any other indirect damage that may be caused by its failure to meet conformance per this Agreement or any other reason whatsoever, shall not be able to hold COMPANY harmless from any claims to be alleged by any third party.

In the event COMPANY elects to stop work on the project prior to the completion of all deliverables stated for the authorized Project, Developer will be entitled to invoice COMPANY for all costs and expenses incurred up to the date of receipt of the notice of termination, plus reasonable termination costs including material disposition costs if applicable.

10. Invoices:  This proposal will be a time and material contract valued and not to exceed the Total Contract Value defined in Exhibit A. Any changes to deliverables, schedule, assumptions, and/or milestone dates shall affect the contract value. Developer will highlight the impact and calculate the additional effort. Developer will present a change order to account for the additional effort. All payments will be invoiced according the milestone schedule above.

11. Payment:  COMPANY shall pay all invoices within Net 30.  Any invoice clarifications should be brought to Developer's attention in writing before the Invoice due date. Developer will provide official time sheets of employees supporting submitted invoice as agreed to within mountain spend chart identified within Appendix A. After such invoice issues have been resolved, the invoice will be due within five (5) business days or on the original invoice due date, whichever is later. In the event Company elects to stop work on the Project prior to the completion of all deliverables stated for the authorized Project, Developer will be entitled to invoice Company for all costs and expenses incurred up to the date of receipt of the notice of termination. Developer reserves the right to withhold delivery of Deliverables, Intellectual Property, and/or Support until payment for agreed amounts due.

12. Cancellation Process:  In the event there are circumstances which result in the cancellation of the Project and Faraday Future Inc. delivers a termination notice to Developer, Developer will, unless otherwise directed by Faraday Future Inc. and subject to its obligations:

   (a)  Terminate promptly all work under this Agreement and transfer title and deliver to the Company all finished work completed prior to receipt of the notice of termination;
   (b)  Transfer title and deliver to Company all work in process, and the parts and materials which Developer produced or acquired in accordance with this Agreement and which Developer cannot use in producing goods for itself or for others;
   (c)  Verify/settle all claims by subcontractors for actual costs that are rendered unrecoverable by such termination and provided the recovery of materials in Developer's possession is ensured; and
   (d)  Take actions reasonably necessary to protect property in Developer's possession in which Company has an interest until disposal instruction from Faraday Future Inc. has been received.

13. Intellectual Property: New and joint Intellectual Property (IP) developed by Developer during the course of this effort will belong to COMPANY upon full payment to Developer of the associated milestone or authorized change order value. Each party shall continue to own all right, title and interest in and to all of its preexisting IP.



13.1 Definitions:

    (a) Intellectual Property ("IP") means confidential information, proprietary information, inventions, improvements, developments, discoveries, technical information, trade secrets, computer programs, source code, writings, designs and patents and patent applications.

    (b) Background Intellectual Property ("Background IP") means (i) any Intellectual Property created prior to the Effective Date of this Agreement, or (ii) any Intellectual Property that was not created in the course of performance of services for COMPANY.

    (c) Derivative Intellectual Property ("Derivative IP") means any Intellectual Property created as a derivative or improvement work of or derived from one or both party's Background IP;

    (d) Foreground Intellectual Property ("Foreground IP") means any Intellectual Property created solely by one Party in the course of performance under this Agreement that is not Derivative IP;

    (e) Jointly Developed Intellectual Property ("Joint IP") means any Intellectual Property created jointly by the Parties in the course of performance under this Agreement.

    (f) Modeling IP ("Modeling IP") means any Intellectual Property that directly supports system modeling, simulation, performance prediction, or visualization of system behavior or performance.

    (g). Information Exchange. It is the intent and understanding of the Parties to maintain and to have an open exchange of technical information during the various phases of the Project. None of the information which may be submitted or exchanged by the Parties shall constitute any representation, warranty, assurance, guarantee or inducement by either Party to the other with respect to the infringement of any Intellectual Property rights, any right of privacy, or other rights of third persons.

13.2 Use of Intellectual Property:

    (a) Background IP. Background IP provided by each Party shall continue to be owned solely by the contributing Party. Notwithstanding the foregoing, if any Developer IP assigned to COMPANY is found to incorporate any Developer Background IP, Developer agrees to grant to COMPANY a fully-paid, non-exclusive, worldwide, irrevocable license to use such Background IP.

    (b) Derivative IP. Derivative IP shall be owned solely by the creating Party. Notwithstanding the foregoing, if any Developer IP assigned to COMPANY is found to incorporate any Developer Derivative IP, Developer agrees to grant to COMPANY a fully-paid, non-exclusive, worldwide, irrevocable license to use such Derivative IP UNLESS such Derivative IP is expressly excluded by incorporating the details of such IP in Appendix B. Appendix B will be amended by the Parties in writing as necessary to expressly exclude the use of any Developer Derivative IP.

    (c') Foreground IP. COMPANY shall own all right, title and interest in and to Foreground IP developed under this Agreement. As such, COMPANY shall have the right to obtain and own any and all patents covering Foreground Information. The decision to file for patent protection or to maintain an invention as a trade secret is solely COMPANY's. COMPANY shall be responsible for all patent protection costs, including, without limitation, costs for the preparation, application, maintenance, accounting, prosecution, enforcement, and defense of each patent. Developer shall disclose to COMPANY any Foreground IP no later than 30 days from creation. Developer shall provide all necessary assistance, including but not limited to execution of assignments, oaths, and declarations from its respective employees, to assist COMPANY in obtaining and in enforcing its rights in any Foreground IP. COMPANY shall be responsible for all expenses associated with such assistance, including payment to Developer at its then current rates for performing such services, including a premium if key personnel are required on short notice. COMPANY is to advise Developer in a timely manner and in writing with regards to any assistance that would be required that would allow Developer to allocate necessary resources and calculate the cost of required assistance.



(d) Joint IP. COMPANY shall own all right, title and interest in and to Joint IP developed under this Agreement. As such, COMPANY shall have the right to obtain and own any and all patents covering Joint IP. The decision to file for patent protection or to maintain an invention as a trade secret is solely COMPANY's. COMPANY shall be responsible for all patent protection costs, including, without limitation, costs for the preparation, application, maintenance, accounting, prosecution, enforcement, and defense of each patent. Developer shall disclose to COMPANY any Joint IP no later than 30 days from creation. Developer shall provide all necessary assistance, including but not limited to execution of assignments, oaths, and declarations from its respective employees, to assist COMPANY in obtaining and in enforcing its rights in any Joint IP. COMPANY shall be responsible for all expenses associated with such assistance, including payment to Developer at its then current rates for performing such services, including a premium if key personnel are required on short notice. COMPANY is to advise Developer in a timely manner and in writing with regards to any assistance that would be required that would allow Developer to allocate necessary resources and calculate the cost of required assistance.

(e) Modeling IP. Each party retains full and exclusive rights to its Modeling IP. Any results, output or reports generated by Developer from the use of Modeling IP will constitute "works for hire" and will be the property of COMPANY.

13.3   Other than those licenses expressly stated in this Section, nothing in this Agreement shall be deemed to grant licenses under any Intellectual Property Rights.

13.4   Developer warrants that it has the right to grant COMPANY the rights and licenses set out herein, and COMPANY warrants that it has the right to grant Developer the rights and licenses set out herein.

14. Termination: This Agreement may be terminated upon mutual written consent of both Parties or upon the occurrence of any of the following: (i) the other party defaults in the performance of one or more of its obligations under this Agreement and such default continues for thirty (30) days after written notice of such default is provided to such defaulting party (ii) the other party becomes bankrupt or insolvent. (iii) Company can terminate this Agreement if the Project happens to be cancelled as set out in Section 13 above or postponed for more than 12 months after review at milestones listed in the timetable; provided however that this Agreement may not terminated just for convenience without valid cause listed in this Article.

In the case of termination, Developer will deliver the following to COMPANY upon receipt of the milestone payment:

All the analysis process, data, used which is related to the project needs to be handed over to COMPANY, and Developer is not allowed to keep these data.

IP related to/during project belongs to COMPANY as outlined by Section 14

15. Assignment: Neither party may assign this Agreement nor any of the benefits or obligations contained herein, in whole or in part, without the prior written consent of the other party.

16. Taxes: COMPANY agrees to pay any state, local or other taxes or charges actually paid by Developer in connection with providing the Materials under this Agreement; provided that COMPANY shall not be responsible for the personal income taxes of any Developer Party.

17. Scope Change: In the event that changes to the Scope, Deliverables or Schedule are requested by COMPANY, or proposed by Developer and accepted by COMPANY, the impacted sections of this Agreement shall be updated accordingly. Such updates shall not be binding on either party until approved by both Parties. These updates will be memorialized in Appendix A.

18. Travel: The travel costs incurred by a Developer Party at the request of COMPANY shall be included within quoted costs agreed to as defined in Exhibit A.  In the event that changes to the Scope, Deliverables or Schedule are requested by COMPANY, Company will require from Developer written authorization for these costs before providing any such support or making travel arrangements. This will ensure that COMPANY is not invoiced for any unapproved travel costs.

 Faraday Future Inc.

19. <u>Late Delivery</u>: Late delivery of any Company-supplied item/information or incomplete information or non-functional items will result in at least a day-for-day schedule delay of the remaining project schedule by Developer. Developer will highlight in writing if any items or information are critical path and could affect final delivery dates.   Failure of Developer to inform Company of self-inflicted delays will result in a week-for-week final payment discount accruing at 10% in lieu of all possible remedies.

20. <u>Governing Law</u>: This Agreement shall be governed by the law of the State of California without regard to the conflicts of law provisions thereof, and the parties agree that the exclusive jurisdiction and venue of any litigation with respect of this Agreement shall rest in the federal courts in Los Angeles, California or state courts in Los Angeles, California, and that no party shall claim that such venue is inconvenient or improper.

21. <u>Force Majeure</u>: Neither Party shall be responsible or liable for failing to perform any part of this Agreement or for any delay in performing under this Agreement, directly or indirectly resulting from or contributed to by any foreign or domestic embargoes, seizures, acts of God, insurrections, wars and/or continuance of war; or the adoption or enactment of any law, ordinance, regulation, ruling or order directly or indirectly interfering with its performance under this Agreement; or lack of the usual means of transportation, fires, floods, explosion, strikes or earthquakes; or other events or contingencies beyond its control, either of the foregoing nature or of any other kind.

 Faraday Future Inc.

**EXHIBIT A**

**STATEMENT OF WORK**

1. This Statement of Work specifies the Development Tasks and Deliverables due from Developer, as more particularly described herein. The Development Task Description and Deliverables are as follows:

      1.1. Development Task Description:

      To provide on-site Engineering and CAD Support to assist Faraday & Future in the concept engineering development process to enable the prototype manufacture of samples for fitment in a Show vehicle planned for December 2015 all in accordance with your recent Concept Engineering Support Proposal to Sohel Merchant dated 22nd May 2015.

      Statement of work as detailed below ;

**1. Front Seats**
- Structure to meet FMVSS requirements and be able to achieve ENCAP 5 star rating
- 16 way power seats
- Power lumbar
- Power headrests
- Heating
- Ventilation
- Massage system
- Cushion length adjustment
- Package protection for a captain's armrest


**2. Executive Rear Seats**
- Independent executive style 2 separate rear seats with console in the middle
- ABTS
- Ability to recline up to 55 degrees (subject to package constraints)
- Full electric function for rear seat articulation
- Leg support
- Heating
- Ventilation
- Massage system
- Ability to integrate with the control panel in rear center console
- Development of 60/40 Split Folding 'Base' Seat as part of above

 Faraday Future Inc.

1.2  Engineering Support Proposal :

**Key Assumptions**

- Front seat architecture will initially be based on Futuris FS-3.2 structure with the ability to changeover to FS-4 or other composite structure options when those products are fully validated and available for use.

- Rear seats architecture to be developed in conjunction with F&F based on packaging constraints and feature requirements

- Initial support for the concept development phase will be with a Lead Design Engineer and CAD Designer each for 1st and 2nd row seats. The two people supporting 1st row will be based on-site at F&F for 2 to 3 days per week as required.

- 2nd row Lead Design Engineer & CAD Designer will be based in Australia and support 1 week per month on-site at F&F to participate in design reviews and concept presentations.

- Lead Design Engineer for 1st row will also act as the liaison engineer to interface and communicate with the 2nd row engineering team to be based in Australia.

- The design team will meet through video conferencing on a regular basis as required.

- Futuris is capable and resourced to provide ALIAS surfacing, CAE simulation, Trim Engineering and Prototype Development support as required by F&F. Any support requirement for these activities for the next phase will be quoted separately based on an agreed scope of work.

- Futuris commits to extend the support of a Chief Engineer, Program Manager and Executive management support for the peer design reviews and general guidance required to the design team during the initial phase at no additional cost.

- Costing provided below is based on the specified support arrangement and takes into consideration the associated travel and incidental expenses.

- Futuris is willing to share its IP on current and future seat architectures being developed on the basis that
- Futuris will be the intended production source for the manufacture and supply of seats for F&F.

- Futuris will have to reallocate the activities and release the dedicated high-end resources required to support this activity. As such, a commencement date of 15th of June 2015 is recommended for this design activity. This support arrangement will be reviewed and additional resources allocated as required by F&F at additional cost

1.3. Timing:     July – Sept 2015, 3 Month engagement from receipt of instruction to proceed / PO.  Scope and timing subject to change based on Company change requirements as defined within section 1.2 Deliverables.



2. <u>Compensation</u>:  The Company shall pay Developer as defined in <u>Appendix A</u> of this Statement of Work:

   2.1  US $255,000.00 ($85,000 for 3 months) :  Invoicing and payment as defined within Section 10 and 11 above.

3.  <u>Miscellaneous:</u> This Statement of Work (together with <u>Exhibit A</u> and <u>Appendix A</u> attached hereto) is wholly incorporated by reference into the Agreement. In the event of a conflict between the terms of this Agreement and the Statement of Work, the terms and conditions of the Agreement shall prevail.

Faraday & Future Inc.,                                              Futuris Group of Companies.

By: _____                  By: _____

Print Name:  <u>Carl Ellis</u>                         Print Name:  _SADHA KAMESWARAN_

Title: <u>Purchasing Manager</u>                    Title:  _GENERAL MANAGER – BD & PROGRAMS_

Date:  _6/15/15_                                   Date:  _6/18/15_



Faraday Future Inc.

**Addendum - Appendix A (October 2, 2015)**

**Scope of Work for Production ED&D Engagement**

Engineering Activities

- Contribute in creation of a complete seat SOR
- Collaborate with Faraday Studio on styling, craftsmanship and select materials
- Design new seat structures and mechanisms, including researching materials and manufacturing solutions to meet FF agreed and frozen styling themes
- Participate in design reviews and provide technical input to Faraday's design reviews
- Assess seat performance against all load case requirements using CAE and optimize design
- Select and integrate all Tier 2 components
  (comfort features, safety components, mechanisms, ...)
- Manage Tier 2 suppliers (ED&D, performance, prototypes, ...)
- Design foam pads and plastics to suit FF frozen styling themes
- Design  and development of trim covers considering trim attachment strategies and interfaces
- Material selection (Futuris designed and sourced components)
- Perform tolerance studies
- Participate in comfort development activities and recommend foam contours/formulations to meet comfort targets
- Deploy engineering processes : DFMEA, DFA, DFM, BOM, drawing release
- Ensure seats fit into vehicle for ease of fitment by FF
- Prepare and execute validation plan, including coordination of test parts and location
- Provide engineering support for prototype and production builds
- Provide engineering input to Program Management, track and report progress
  (performance, mass etc.,)

Key Quote Assumptions

- Seat Feature matrix is based on joint review of Rev 10 and initial safety targets based on Rev 01
- Source directed components are assumed to be fully validated at a subsystem level. No development time or cost has been allowed for or included in this quotation.  This includes but not limited to seat belts, buckles, SIABs, OCS, SBR , and trim fabrics etc.
- Tier 2 ED&D costs for sub systems are not included in this proposal. These will be shared transparently with F&F as the scope and costs are finalized.
- Faraday is responsible for all system certification and homologation costs
- SOW including a full RASIC to be reviewed and agreed between Faraday and Futuris prior to program commencement
- The costs of properties for engineering/Beta builds, validation samples etc., have not been included as costs and quantities for these events have not been confirmed. These will need to be quoted once requirements are confirmed.
- Source directed parts are assumed to be fully PPAP approved by F&F with all IMDS inputs supplied to Futuris, in time for final seat PPAP submission.
- ED&D quote is based on the assumption that Futuris will be confirmed as the nominated production seating system supplier.
- Quote is in USD and valid for 4 weeks



Faraday Future Inc.

Timing:        October 2015 – June 2017 based on receipt of instruction to proceed / PO.  Scope and timing
               subject to change based on Company change requirements as defined within section 1.2
               Deliverables.

Compensation:  The Company shall pay Developer as defined below ;

- October 2015 - December 2015 - 3 monthly payments of $323,856.667 = $971,570
- January 2016 - December 2016 - 12 monthly payments of 554,008.583 = $6,648,103
- January 2017 – June 2017        - 6 monthly payments of $605,596.667 = $3,633,580
                                            Total    $11,253,253

Invoice Payment subject to Section 10 of this Agreement.

Payment Terms subject to Section 11 of this Agreement.


IN WITNESS WHEREOF, the parties have executed this Statement of Work to be incorporated by reference into the
Development Services Agreement Addendum dated October 2nd 2015.

Faraday Future Inc.,                                    Futuris Group of Companies

By: _____        By: _____

Print Name:  Carl Ellis_____        Print Name:  _SADHA  KAMESWARAN_____

Title: Purchasing Manager – Interior / Exterior        Title:  _GM – BUSINESS DEVELOPMENT & PROGRAMS_

Date: October 1st 2015_____        Date:  _20th october 2015_

# EXHIBIT D



**Faraday Future**
18455 S Figueroa St, Gardena, CA 90248

# Purchase Order

| Date | P.O. No. |
|------|----------|
| 2/24/2016 | 0213-3106 |

Vendor

Futuris Automotive (CA) LLC
6601 Overlake Place
Newark, CA  94560

| Vendor Quote # | |
|----------------|--|
| Requested By: | Juergen Sauer |

| Payment Terms | Delivery Date |
|---------------|---------------|
| Net 30 | 2/24/2016 |

| Item | Description | Qty | Rate | Amount |
|------|-------------|-----|------|--------|
| Seating | Additional PO to cover Tier 2 ED&T costs all in accordance with "Futuris D&D Breakdown" dated, Feb 1st 2016 | | 0.00 | 0.00 |
| Seating | Initial Quarterly Installments March 2016 - Dec 2016 | 4 | 417,857.143 | 1,671,428.57 |
| Seating | Quarterly Installments March 2017 - Sep 2017 All costs are not to exceed agreed upon amount of $2,925,000 | 3 | 417,857.143 | 1,253,571.43 |
| | | | **Total** | **$2,925,000.00** |

Please send all invoices and/or accounting inquiries  to invoicing@faradayfuture.com

# EXHIBIT E

*CONFIDENTIAL*

## FORBEARANCE AGREEMENT

This Forbearance Agreement (this "Agreement") made effective as of the 14th day of December, 2016 (the "Effective Date") by and between FARADAY&FUTURE INC. (referred to as "Faraday"), and FUTURIS AUTOMOTIVE (CA), LLC ("Futuris").  Faraday and Futuris are collectively referred to as the "Parties."

**WHEREAS**, the Parties deem it to be in their mutual benefit that any Claims, as defined herein, against each other not be asserted in litigation at the present time;

**WHEREAS,** the Parties desire to encourage resolution and/or such further review or disposition of Claims as may result in no lawsuit or claim being filed and, in any case, wish to avoid the expense and uncertainty of litigation of the Claims if at all possible, and are willing to make the stipulations, covenants and agreements hereinafter set forth in order to defer and postpone the commencement of litigation; and

**WHEREAS,** the Parties desire that for the period of this Agreement, they should be able to consider issues relating to the possibility of settling disputes;

**NOW, THEREFORE,** in consideration of the mutual agreements hereinafter set forth, the receipt and sufficiency of which are hereby acknowledged, the Parties do hereby covenant and agree as follows:

1.       As used in this Agreement, the following terms shall have the following meanings:

(a)       "Claims" shall mean any and all claims and/or causes of action, if any, of the Parties that they may have against each other in connection with:

     i.       the Development Services Agreement between and among Faraday and Futuris, dated as of June 15, 2015 (the "Development Services Agreement");

     ii.       any purchase orders issued pursuant to or in connection with the Development Services Agreement; and

     iii.       any engineering, design, and testing (ED&T) services provided pursuant to or in connection with the Development Services Agreement;

     iv.       the claims alleged in the Complaint, filed on December 9, 2016 in the Superior Court of the State of California for the County of Los Angeles, Central District at Case No. BC 643406 (the "California Action"); and

     v.       the claims alleged in the *ex parte* application for writ of attachment served by Futuris on Faraday on December 13, 2016 and filed or proposed to be filed in the California Action, together with all supporting declarations, exhibits, and other attachments thereto (the "Application").

*CONFIDENTIAL*

(b)    "Initial Forbearance Fee" and "Forbearance Payments" shall have the respective meanings set forth in Paragraph 2 hereof.

(c)    "Expiration Date" shall mean the earlier of February 8, 2017, or 15 days from the date that written notice of termination of this Agreement has been served by either of the Parties on the other in accordance with paragraph 9 of this Agreement.

2.    Subject to the provisions hereof, Faraday agrees to pay Futuris (i) within 24 hours of the Parties' execution of this Agreement, an amount equal to $6,000,000 (USD) (the "Initial Forbearance Payment"), (ii) on or before January 31, 2017, an amount equal to $2,000,000 (USD); and (iii) on or before February 28, 2017, an amount equal to $2,000,000 (USD) (collectively, items (i), (ii), and (iii) are the "Forbearance Payments").

3.    Upon execution of this Agreement, Futuris agrees to immediately withdraw the Application without prejudice.

4.    Upon receipt by Futuris of the Initial Forbearance Payment, Futuris shall immediately dismiss the California Action without prejudice, and shall refrain from re-filing the California Action or filing any new action alleging the Claims, any other claims similar to those alleged the California Action, or any claims with respect to non-payment or any violation of this Agreement until February 7, 2017.

5.    Futuris agrees that, through and including the Expiration Date, it shall treat the fact of this Agreement, and the contents of this Agreement, as absolutely confidential, and, except as reasonably necessary to effectuate the express terms of this Agreement, shall not disclose anything regarding this Agreement, including, without limitation, the Claims, to any other person or entity not directly affiliated with the Parties, unless legally compelled to do so, and then, only upon timely prior notice to Faraday, giving Faraday sufficient time to contest any such disclosure.

6.    This Agreement may not be altered or amended except by written agreement executed by all Parties. The Parties hereby agree that terms of this Agreement have not been changed, modified, or expanded by any oral agreements or representations entered into or made by the Parties prior to or at the execution of this Agreement.

7.    The Parties hereto acknowledge that each of them has had the benefit of counsel of their choice and has been offered an opportunity to review this Agreement with chosen counsel.  The Parties hereto further acknowledge that they have, individually or through their respective counsel, participated in the preparation of this Agreement, and it is understood that no provision hereof shall be construed against any party hereto by reason of either party having drafted or prepared this Agreement.

8.    This Agreement may be executed in one or more original, electronic, or facsimile counterparts, each of which shall be deemed an original, but also which together will constitute one and the same instrument.

ACTIVE 218768903v.3

*CONFIDENTIAL*

9.      This Agreement shall terminate on the Expiration Date as provided in paragraph 1(c) above, unless extended in writing by the parties to be bound.

10.     Futuris or Faraday may terminate this Agreement, effective 15 days after the date of serving a written notice of termination, by serving notice of termination by letter to the other party.  Such notice letter shall be served simultaneously by electronic transmission and United States certified mail, return receipt requested, to the following persons at the following addresses and e-mail addresses:

> If to Futuris:
>
> Fred D. Heather
> Glaser Weil Fink Howard Avchen & Shapiro LLP
> 10250 Constellation Boulevard, 19th Floor
> Los Angeles, CA 90067
> fheather@glaserweil.com
>
> -and-
>
> John Wehrenberg
> Futuris Automotive (CA), LLC
> 6601 Overlake Place
> Newark, CA 94560
>
> If to Faraday:
>
> [Jeffrey E. Bjork]
> Sidley Austin LLP
> 555 West Fifth Street, Suite 4000
> Los Angeles, CA 90013
> jbjork@sidley.com
>
> -and-
>
> Tom Wessner
> Faraday & Future, Inc.
> 18455 S. Figueroa St.
> Los Angeles, CA 90248
> Attn: Legal Department
> legal@ff.com

11.     On or after the Expiration Date of this Agreement, the Parties shall have the right to file and pursue any and all Claims and to seek any and all legal remedies against each other that may be available to them, if any, and the Parties shall be entitled to assert any defenses to such Claims, if any, subject to the terms of this Agreement.

*CONFIDENTIAL*

12.     Nothing in this Agreement shall be construed as an admission or denial by any of the Parties as to the merits of any of the Claims or the merits of any of the defenses to any Claims.

13.     The Parties represent and warrant that each of the individuals signing this Agreement has authority to sign on behalf of the individual or entity for which they have acted as signatory.

**SO AGREED:**

Date:   December 14, 2016          **FARADAY&FUTURE INC.**

                                   By:

                                   Name:  Chaoying Deng

                                   Title:  President


                                   **FUTURIS AUTOMOTIVE (CA), LLC**


                                   By:   _____

                                         Name:  _____

                                         Title:  _____

ACTIVE 218768903v.3

# EXHIBIT F

**Kaileia Laraba**

| | |
|---|---|
| **From:** | Gordon, Dave <dgordon@futurisgroup.com> |
| **Sent:** | Wednesday, May 17, 2017 1:35 PM |
| **To:** | andy.giesa@ff.com; Nav Jessel; Kaileia Laraba; Carl Ellis; Riley Boblenz; Matt Sampson |
| **Cc:** | Brow, David; Smith, Rohan; Anderson, Scott; Bain, Mark; Wehrenberg, John; Thiele, Brian |
| **Subject:** | Futuris Interim Re-engagement |
| **Attachments:** | FF Re-engage May 17.pdf; Pre-Engagement Engineering task list.pdf |

Faraday Team,

Futuris recently participated in a workshop at Faraday which looked at ways to reduce the investment required to launch their DF91 seats by the end of next year.  Futuris has also made a proposal to restart formal development activity with FF but development activity will not begin formally until around August of this year due to FF funding restrictions.

In the interim, **Futuris will undertake some limited engineering work for FF**.  The purpose of this note is to communicate our commitment to this interim activity which was agreed to by both parties last week.

Please contact Scott Anderson or myself if questions.

Best Regards,

**DAVE GORDON**
Vice President, Seating

**FUTURIS** Group | Corporate HQ
14925 W. 11 Mile Rd. | Oak Park, MI  48237
**Mobile** 734.347.5330  |  **Office** 248.439.7863
**Email** dgordon@futurisgroup.com  | **Web** futurisgroup.com
BECAUSE WHAT'S ON THE INSIDE MATTERS

_____

_____

## Disclaimer

This message is intended for the addressee named above. It may contain confidential or privileged information.

If you have received this e-mail in error, please notify the sender immediately and delete this e-mail. You must not disclose, copy or use any part of it.

All e-mail is scanned for inappropriate material that may breach Futuris Group of Companies policies.

Futuris Group of Companies will not accept liability for any loss or damage caused by software viruses contained in any attachments. Attachments should be scanned for viruses before opening.

Commercial-in-confidence.

May 17, 2017

Mr. Sohel Merchant
Senior Director Vehicle Engineering
Faraday Future

Futuris recently participated in a workshop at Faraday which looked at ways to reduce the investment required to launch their DF91 seats by the end of next year.  Futuris has also made a proposal to restart formal development activity with FF but development activity will not begin formally until around August of this year due to FF funding restrictions.

In the interim, **Futuris will undertake some limited engineering work for FF**.  The purpose of this note is to communicate our commitment to this interim activity which was agreed to by both parties last week.  The premise for the work is that Futuris over-billed slightly on the Beta 60/40 seat activity and we will now do this work for FF as compensation settlement.

**Design and Development** - we will undertake design work for FF during May, June, and July.  The specific scope of work has been jointly developed for this activity (attached).  Much of that is around changes to the design to reduce investment.

**Beta Build** - there are likely to be additional seats built for FF development and testing needs.  These will be ordered and reimbursed separately.

**Additional Support** - during the interim period, while we are doing some design and manufacturing feasibility work, there will be support required from our Advanced Operations and Supply Chain.  Much of that will be to explore different methods of design and manufacture as well as different sourcing strategies.

Thank you for the opportunity to partner with Faraday Future,


**DAVE GORDON**
Vice President, Seating
**Mobile** 734.347.5330  |  **Office** 248.439.7863
**Email** dgordon@futurisgroup.com  | **Web** futurisgroup.com

BECAUSE WHAT'S ON THE INSIDE MATTERS


cc.   Carl Ellis            Kaileia Laraba        Riley Boblenz         Matt Sampson
      Nav Jessel           Andy Giesea           Scott Anderson        Mark Bain
      Dave Brow            Brian Thiele          John Wehrenberg

# EXHIBIT G



## Faraday Future

18455 S Figueroa St, Gardena, CA 90248

| | |
|---|---|
| Pre-Requisition # | : |
| Purchase Order (PO) # | : 4200000081 |
| Purchase Order Date | : Jan 4, 2018 |
| PO REVISION Date | : |
| Supplier Quote | : |
| Payment Terms | : Net due in 30 days |
| INCO Terms | : N/A |
| Named Place of Delivery | : CA |
| Carrier Info. | : |
| Cost Center or COGS | : Seat |
| Program Phase | : |

**4200000081**

| Ship From (Origin) | | Ship To (Destination) | | Bill To |
|---|---|---|---|---|
| Supplier Name | : Adient US LLC | Destination name | : Gardena HQ | **Faraday & Future Inc.** **E-mail all invoices to:** **invoicing@ff.com** or mail to: **Attn: A/P** **18455 S Figueroa St Gardena, CA 90248 USA** |
| Supplier Address | : 440 Portrero Avenue , Sunnyvale , California , 94085 , USA | Address | : 18455 S Figueroa St , Gardena , California , 90248 , USA | |
| Supplier Contact | : Raphaelle Durand | Faraday Buyer | : KLaraba | |
| Supplier Phone | : 818 357 7035 | | | |
| Supplier E-mail | : raphaelle.durand@adient.com | Faraday Requestor | : Matt Sampson | |
| Supplier ID Code | : 1001874 | Ship to Code | : 1001 | |
| Supplier Ship from ID Code | : 1001874 ( Adient US LLC ) | | | |

This PO is raised for the initial payment to begin engagement with Adient - approved in Sourcing Council 12/19/17.

| Item # | Faraday Part # | Mfg. Name | Manufacter Part # | Model # | Description | Qty | UoM | Due Date | Unit Price | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| 00010 | | | | | Initial payment to start engagement | 1 | EA | Jan 31, 2018 | 2,960,560.00 USD | 2,960,560.00 USD |

**Total Value :   2,960,560.00 USD**



## INVOICE AND PAYMENT INSTRUCTIONS

**TO ENSURE TIMELY PAYMENT, SUPPLIERS ARE REQUIRED TO COMPLY WITH THE FOLLOWING INSTRUCTIONS:**

### 1. INVOICE SUBMISSION

**Via email:  invoicing@ff.com**
**Faraday Future strongly encourages the use of electronic invoices and credit notes. These documents are received immediately for processing.**

**Via regular mail: 18455 S Figueroa Street, Gardena, CA 90248, Attn: Accounts Payable**
**Please note regular mail submissions may cause delays.**

**Correspondence submitted via the methods listed above are the _only_ methods honored for payment processing.**

### 2. PURCHASE ORDER NUMBER

**Suppliers must have received an official Purchase Order before providing goods or delivering services to Faraday Future. If a Purchase Order has not been provided to you for execution of services or supply of goods, please contact a Purchasing Specialist immediately.**

**Each invoice must accurately indicate the Purchase Order number to which it refers and must match the cost, part number and/or item description.**

**NON-OBSERVATION AND NON-COMPLIANCE WITH THE PROVISIONS UNDER SECTION 1 AND 2 ABOVE WILL RESULT IN A RETURN OF YOUR INVOICE AND A DELAY IN PAYMENT, WHICH DELAY SHALL BE EXEMPTED FROM THE DETERMININATION OF TIMELY PAYMENT PURSUANT TO THE PURCHASE ORDER.**

### 3. BANK ACCOUNT AUTHENTICATION

**Faraday Future recommends always mentioning your accurate bank account data on your invoices. If wiring instructions are not included in the invoice, please submit complete wiring instructions (including beneficiary account name, beneficiary account number, bank routing number and address). Please be mindful to include any additional information specific to your country's processing needs.**

### 4. FF INVOICING & SUPPLIER INQUIRIES

**If you require any further information or support, please do not hesitate to contact us at:**
**Email: invoicing@ff.com                 Telephone: 424 295-2651**
**A representative will be in contact within 48 hours.**

# EXHIBIT H



18455 S Figueroa St, Gardena, CA 90248



4200000082

| | |
|---|---|
| Pre-Requisition # | : |
| Purchase Order (PO) # | : 4200000082 |
| Purchase Order Date | : Jan 4, 2018 |
| PO REVISION Date | : Jan 16, 2018 |
| Supplier Quote | : |
| Payment Terms | : Net due in 30 days |
| INCO Terms | : N/A |
| Named Place of Delivery | : CA |
| Carrier Info. | : |
| Cost Center or COGS | : Seat |
| Program Phase | : |

| Ship From (Origin) | | Ship To (Destination) | | Bill To |
|---|---|---|---|---|
| Supplier Name | : Adient US LLC | Destination name | : Gardena HQ | **Faraday & Future Inc.** |
| Supplier Address | : 440 Portrero Avenue , Sunnyvale , California , 94085 , USA | Address | 18455 S Figueroa St , Gardena , California , 90248 , USA | **E-mail all invoices to:** **invoicing@ff.com** or mail to: **Attn: A/P** |
| Supplier Contact | : Raphaelle Durand | Faraday Buyer | : KLaraba | **18455 S Figueroa St** |
| Supplier Phone | : 818 357 7035 | | | **Gardena, CA** |
| Supplier E-mail | : raphaelle.durand@adient.com | Faraday Requestor | : Matt Sampson | **90248** |
| Supplier ID Code | : 1001874 | Ship to Code | : 1001 | **USA** |
| Supplier Ship from ID Code | : 1001874 ( Adient US LLC ) | | | |

This order is raised to cover Beta start up costs provided in quote from Raphaelle to Kaileia on 12/13/2017. Approved in Sourcing Council on 12/19/2017.

| Item # | Faraday Part # | Mfg. Name | Manufacter Part # | Model # | Description | Qty | UoM | Due Date | Unit Price | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| 00010 | | | | | Start-up costs | 1 | EA | Jan 5, 2018 | 139,267.00 USD | 139,267.00 USD |
| 00020 | | | | | Engineering Support | 1 | EA | Jan 5, 2018 | 127,800.00 USD | 127,800.00 USD |
| 00030 | | | | | Material | 1 | EA | Jan 5, 2018 | 1,236,559.00 USD | 1,236,559.00 USD |
| 00040 | | | | | Freight | 1 | EA | Jan 5, 2018 | 101,596.00 USD | 101,596.00 USD |
| 00050 | | | | | Assembly | 1 | EA | Jan 5, 2018 | 77,110.00 USD | 77,110.00 USD |

| 00060 | | | | | Packaging | 1 | EA | Jan 5, 2018 | 10,615.00 USD | 10,615.00 USD |
| 00070 | | | | | DV testing | 1 | EA | Jan 5, 2018 | 197,774.00 USD | 197,774.00 USD |

**Total Value :   1,890,721.00 USD**



## INVOICE AND PAYMENT INSTRUCTIONS

**TO ENSURE TIMELY PAYMENT, SUPPLIERS ARE REQUIRED TO COMPLY WITH THE FOLLOWING INSTRUCTIONS:**

### 1. INVOICE SUBMISSION

**Via email:  invoicing@ff.com**
**Faraday Future strongly encourages the use of electronic invoices and credit notes. These documents are received immediately for processing.**

**Via regular mail: 18455 S Figueroa Street, Gardena, CA 90248, Attn: Accounts Payable**
**Please note regular mail submissions may cause delays.**

**Correspondence submitted via the methods listed above are the only methods honored for payment processing.**

### 2. PURCHASE ORDER NUMBER

**Suppliers must have received an official Purchase Order before providing goods or delivering services to Faraday Future. If a Purchase Order has not been provided to you for execution of services or supply of goods, please contact a Purchasing Specialist immediately.**

**Each invoice must accurately indicate the Purchase Order number to which it refers and must match the cost, part number and/or item description.**

**NON-OBSERVATION AND NON-COMPLIANCE WITH THE PROVISIONS UNDER SECTION 1 AND 2 ABOVE WILL RESULT IN A RETURN OF YOUR INVOICE AND A DELAY IN PAYMENT, WHICH DELAY SHALL BE EXEMPTED FROM THE DETERMININATION OF TIMELY PAYMENT PURSUANT TO THE PURCHASE ORDER.**

### 3. BANK ACCOUNT AUTHENTICATION

**Faraday Future recommends always mentioning your accurate bank account data on your invoices. If wiring instructions are not included in the invoice, please submit complete wiring instructions (including beneficiary account name, beneficiary account number, bank routing number and address). Please be mindful to include any additional information specific to your country's processing needs.**

### 4. FF INVOICING & SUPPLIER INQUIRIES

**If you require any further information or support, please do not hesitate to contact us at:**
**Email: invoicing@ff.com               Telephone: 424 295-2651**
**A representative will be in contact within 48 hours.**

# EXHIBIT I



18455 S Figueroa St, Gardena, CA 90248



| | | |
|---|---|---|
| Pre-Requisition # | : | |
| Purchase Order (PO) # | : | 4300004898 |
| Purchase Order Date | : | Apr 6, 2018 |
| PO REVISION Date | : | |
| Supplier Quote | : | |
| Payment Terms | : | Net due in 30 days |
| INCO Terms | : | N/A |
| Named Place of Delivery | : | |
| Carrier Info. | : | |
| Cost Center or COGS | : | Seating |
| Program Phase | : | |

| Ship From (Origin) | | Ship To (Destination) | | Bill To |
|---|---|---|---|---|
| Supplier Name | : C.H. Robinson Worldwide, Inc | Destination name | : Dominguez Hill / Compton | **Faraday & Future Inc.** |
| Supplier Address | : , Minneapolis , Minnesota , 55480 , USA | Address | 1957 E Gladwick St , Compton , California , 90220 , USA | **E-mail all invoices to:** **invoicing@ff.com** or mail to: **Attn: A/P** |
| Supplier Contact | : | Faraday Buyer | : Kaileia Laraba | **18455 S Figueroa St** |
| Supplier Phone | : | | | **Gardena, CA** |
| Supplier E-mail | : | Faraday Requestor | : Shawn Cherva | **90248** |
| Supplier ID Code | : 5000050 | Ship to Code | : 1002 | **USA** |
| Supplier Ship from ID Code | : 5000050 ( C.H. Robinson Worldwide, Inc ) | | | |

This order is raised to cover shipment costs to receive FF seating parts/tools/equipment from Beta from Adient after their cancellation.

| Item # | Faraday Part # | Mfg. Name | Manufacter Part # | Model # | Description | Qty | UoM | Due Date | Unit Price | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| 00010 | | | | | Shipping Costs (Adient to FF) | 3 | AU | Mar 23, 2018 | 650.00 USD | 1,950.00 USD |

**Total Value :**     **1,950.00 USD**



## INVOICE AND PAYMENT INSTRUCTIONS

**TO ENSURE TIMELY PAYMENT, SUPPLIERS ARE REQUIRED TO COMPLY WITH THE FOLLOWING INSTRUCTIONS:**

### 1. INVOICE SUBMISSION

**Via email:  invoicing@ff.com**
**Faraday Future strongly encourages the use of electronic invoices and credit notes. These documents are received immediately for processing.**

**Via regular mail: 18455 S Figueroa Street, Gardena, CA 90248, Attn: Accounts Payable**
**Please note regular mail submissions may cause delays.**

**Correspondence submitted via the methods listed above are the only methods honored for payment processing.**

### 2. PURCHASE ORDER NUMBER

**Suppliers must have received an official Purchase Order before providing goods or delivering services to Faraday Future. If a Purchase Order has not been provided to you for execution of services or supply of goods, please contact a Purchasing Specialist immediately.**

**Each invoice must accurately indicate the Purchase Order number to which it refers and must match the cost, part number and/or item description.**

**NON-OBSERVATION AND NON-COMPLIANCE WITH THE PROVISIONS UNDER SECTION 1 AND 2 ABOVE WILL RESULT IN A RETURN OF YOUR INVOICE AND A DELAY IN PAYMENT, WHICH DELAY SHALL BE EXEMPTED FROM THE DETERMININATION OF TIMELY PAYMENT PURSUANT TO THE PURCHASE ORDER.**

### 3. BANK ACCOUNT AUTHENTICATION

**Faraday Future recommends always mentioning your accurate bank account data on your invoices. If wiring instructions are not included in the invoice, please submit complete wiring instructions (including beneficiary account name, beneficiary account number, bank routing number and address). Please be mindful to include any additional information specific to your country's processing needs.**

### 4. FF INVOICING & SUPPLIER INQUIRIES

**If you require any further information or support, please do not hesitate to contact us at:**
**Email: invoicing@ff.com              Telephone: 424 295-2651**
**A representative will be in contact within 48 hours.**

# EXHIBIT J



18455 S Figueroa St, Gardena, CA 90248



| | |
|---|---|
| Pre-Requisition # | : |
| Purchase Order (PO) # | : 4200000125 |
| Purchase Order Date | : Apr 11, 2018 |
| PO REVISION Date | : |
| Supplier Quote | : |
| Payment Terms | : Net due in 30 days |
| INCO Terms | : N/A |
| Named Place of Delivery | : |
| Carrier Info. | : |
| Cost Center or COGS | : Seating |
| Program Phase | : |

| Ship From (Origin) | | Ship To (Destination) | | Bill To |
|---|---|---|---|---|
| Supplier Name | : C.H. Robinson Worldwide, Inc | Destination name | : Dominguez Hill / Compton | **Faraday & Future Inc.** |
| Supplier Address | : , Minneapolis , Minnesota , 55480 , USA | Address | 1957 E Gladwick St , Compton , California , 90220 , USA | **E-mail all invoices to:** **invoicing@ff.com** or mail to: **Attn: A/P** |
| Supplier Contact | : | Faraday Buyer | : Kaileia Laraba | **18455 S Figueroa St** |
| Supplier Phone | : | | | **Gardena, CA** |
| Supplier E-mail | : | Faraday Requestor | : Shawn Cherva | **90248** |
| Supplier ID Code | : 5000050 | Ship to Code | : 1002 | **USA** |
| Supplier Ship from ID Code | : 5000050 ( C.H. Robinson Worldwide, Inc ) | | | |

This order os raised to cover shipment costs to receive FF seating parts/tools/equipment from Beta from Adient after their cancellation.

| Item # | Faraday Part # | Mfg. Name | Manufacter Part # | Model # | Description | Qty | UoM | Due Date | Unit Price | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| 00010 | | | | | Shipping Costs (Adient to FF) | 2 | AU | Mar 26, 2018 | 650.00 USD | 1,300.00 USD |

**Total Value :**    **1,300.00 USD**



# INVOICE AND PAYMENT INSTRUCTIONS

**TO ENSURE TIMELY PAYMENT, SUPPLIERS ARE REQUIRED TO COMPLY WITH THE FOLLOWING INSTRUCTIONS:**

## 1. INVOICE SUBMISSION

**Via email:  invoicing@ff.com**
**Faraday Future strongly encourages the use of electronic invoices and credit notes. These documents are received immediately for processing.**

**Via regular mail: 18455 S Figueroa Street, Gardena, CA 90248, Attn: Accounts Payable**
**Please note regular mail submissions may cause delays.**

**Correspondence submitted via the methods listed above are the only methods honored for payment processing.**

## 2. PURCHASE ORDER NUMBER

**Suppliers must have received an official Purchase Order before providing goods or delivering services to Faraday Future. If a Purchase Order has not been provided to you for execution of services or supply of goods, please contact a Purchasing Specialist immediately.**

**Each invoice must accurately indicate the Purchase Order number to which it refers and must match the cost, part number and/or item description.**

**NON-OBSERVATION AND NON-COMPLIANCE WITH THE PROVISIONS UNDER SECTION 1 AND 2 ABOVE WILL RESULT IN A RETURN OF YOUR INVOICE AND A DELAY IN PAYMENT, WHICH DELAY SHALL BE EXEMPTED FROM THE DETERMININATION OF TIMELY PAYMENT PURSUANT TO THE PURCHASE ORDER.**

## 3. BANK ACCOUNT AUTHENTICATION

**Faraday Future recommends always mentioning your accurate bank account data on your invoices. If wiring instructions are not included in the invoice, please submit complete wiring instructions (including beneficiary account name, beneficiary account number, bank routing number and address). Please be mindful to include any additional information specific to your country's processing needs.**

## 4. FF INVOICING & SUPPLIER INQUIRIES

**If you require any further information or support, please do not hesitate to contact us at:**
**Email: invoicing@ff.com                    Telephone: 424 295-2651**
**A representative will be in contact within 48 hours.**